Brendan J. CROSBY, et al.

v.

Donald S. BAIZLEY, et al.

Supreme Judicial Court of Maine.

Argued Jan. 19, 1994.

Decided May 16, 1994.

Eric Mehnert (orally), Hawkes & Mehnert, Jay R. Krall, Augusta, for plaintiffs.

James D. Poliquin (orally), Norman, Hanson & Detroy, Portland, James F. Day, Bath, for defendants.

Before WATHEN, C.J., ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ. and COLLINS, A.R.J.[*]

COLLINS, Active Retired Justice.

Donald S. and Beverly Baizley appeal from a judgment entered in the Superior Court (Sagadahoc County, *Marsano, J.*) holding that Brendan J. and Anne Marie Crosby acquired a strip of land by acquiescence and that Baizley was liable in trespass. Baizley argues that the trial court erred in denying his motion for a judgment as a matter of law. He argues that there was insufficient evidence to allow the jury to find acquiescence. Crosby cross-appeals and argues that the trial court erred in instructing on adverse possession. We vacate the judgment.

This appeal concerns a boundary dispute between abutting landowners—Crosby and Baizley. Both parties claim ownership to a strip of land at their common border (the "disputed strip"). The deeded boundary line, as determined by a court ordered survey, indicates that the disputed strip is a part of Baizley's property. However, Crosby claims ownership of the disputed strip through adverse possession and/or acquiescence. The

relevant facts occurred within four distinct periods.

### a. 1967–1978

Prior to 1967, all of the property at issue in this case was owned by Maynard and Geraldine Brown (the "common grantor"). In 1967, the common grantor carved a parcel of land out of their property and, on July 21, 1967, conveyed it to Neal and Priscilla Brown ("Brown"). This parcel abutted, on three sides, property retained by the common grantor. The deed describes the parcel's boundaries as straight lines connecting four iron pins. The common grantor personally set all the pins. During this period, the common grantor did not reside on the abutting property, but used it as a hayfield. Before the 1967 conveyance, Brown walked the property with the common grantor and saw all four pins. Their path took them along the edge of the common grantor's hayfield near the disputed strip. Brown assumed that the boundary line was the edge of the hayfield. Brown did not testify that the common grantor orally represented the hayfield as the boundary. In 1968, Brown built a house on the parcel. No part of the house was built on the disputed strip. From this point on, Brown maintained a yard on a portion of the disputed strip up to the hayfield. Brown placed an above-ground pool in the disputed strip in 1971 or 1975 and removed it around 1980. During Brown's occupancy, he engaged in the following activities within the disputed strip: he tended a garden, buried tree stumps, put up a doll house later used as a turkey pen, removed trees struck by lightning, erected a tree house, a tree swing, a table on a tree stump, and piled boards and debris. The common grantor neither made any use of the disputed strip nor objected to Brown's use. However, at one point the common grantor gave Brown permission to graze a donkey to the edge of the field. Testimony indicates that the common grantor placed the boundary line intentionally back from the hayfield "so that he could clear

---

[*] Justice Collins sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity of Active Retired Justice.

the brush back from the edge of the field as it grew out into the field."

### b. 1978–1989

In July, 1978, the common grantor conveyed property, including the abutting parcel, to Baizley. Soon thereafter, Brown received permission from Baizley to continue grazing his donkey. However, no evidence indicates that they discussed Brown's other uses of the disputed strip. Brown continued to use the disputed strip as he had previously. Baizley did not object to this use even though he saw the tended grass, pool and garden. Baizley used the abutting land as a hayfield and mowed it twice a year. During this time he limbed a few trees within the disputed strip and, at times, parked equipment there. In 1985, Baizley stored telephone poles in the disputed strip. In 1986, Baizley began residing on the abutting property. In 1988, Baizley used survey equipment, although he is not a surveyor, and located a boundary line (very near the deeded line indicated by the court-ordered survey) indicating that the disputed strip was part of his property. Brown was present during this amateur survey. As a result, Brown agreed to move his shed, which was slightly over the line, and asked Baizley if he could continue to mow and garden on the disputed strip. Baizley agreed to Brown's continued use. Brown testified that, despite his actions, he still thought that he owned the disputed strip.

### c. 1989–present

In November 1989, Brown conveyed the parcel to Crosby. Prior to closing, Crosby walked the property with a realtor and with Brown and located both pins that form the deeded boundary between the abutting parcels. Both times that Crosby was shown the property, he was led along Baizley's hayfield. Crosby believed the hayfield constituted the boundary between the properties. Baizley saw Crosby and Brown walking the property prior to the sale but did not say anything to either party. A mortgage sketch was done for Crosby which indicated that the boundary was a straight line from pin to pin. After purchase, Crosby began using the disputed strip as Brown had. During this time, Baizley dug up part of the disputed strip with his tractor, placed a pile of manure and temporarily placed a junk vehicle in the disputed strip. In 1990, both Crosby and Baizley knew the other claimed ownership of the disputed strip. At one point, Crosby showed Baizley a copy of a letter from an attorney supporting Crosby's claim to the disputed strip. On September 7, 1990, Baizley cut down ten mature pine trees and one beech tree from the disputed strip and began laying a fence. Only after police arrived did Baizley cease his activity.

In September, 1990, Crosby sued Baizley alleging trespass and conversion, injury to lands and property pursuant to 14 M.R.S.A. section 7552, intentional infliction of emotional distress, adverse possession, and acquiescence. In addition, Crosby sought punitive damages. The trial court found insufficient evidence to allow the jury to consider treble damages. 14 M.R.S.A. § 7552 (Supp.1993). The trial court denied Baizley's motions for a judgment as a matter of law. The jury found for Baizley on the adverse possession and intentional infliction of emotional distress claims but found in favor of Crosby on the acquiescence claim—thus finding that Crosby had acquired title to the disputed strip. The jury awarded $250 in damages for the trespass and $5,000 in punitive damages to Crosby. The trial court converted the punitive damages to additional compensatory damages. A judgment was entered in accordance with these findings. Baizley appeals from the judgment and Crosby cross-appeals.

## ADVERSE POSSESSION

Crosby raises two arguments in support of his assertion that the trial court improperly instructed the jury on the law of adverse possession. His first argument focuses on the following instruction given by the trial court:

One who by mistake occupies for 20 years or more land which is not covered by his deed with no intention to claim title beyond his actual boundary wherever that may be does not thereby acquire title by adverse possession to the true line—beyond the true line. In the case of occupan-

cy by mistake beyond a line capable of being ascertained, the intention to claim title to the extent of the occupancy must appear to be absolute and not conditional, otherwise the possession will not be deemed adverse to the true owner. It is not merely the existence of a mistake but the presence or absence of the requisite intention to claim title that fixes the character of the entry and determines the question of adverse possession.

Crosby argues that this instruction improperly shifts the focus from whether the elements of adverse possession are met to whether there is a mistake. He claims that "mistake" is relevant only to providing evidence of the intent of the possessory party and that any mistake is not determinative of the issue. Finally, Crosby claims that the trial court erred in refusing to add the following to its instructions: "The test is to hold adversely against all persons, not the mistake of entry." (quoting *McMullen v. Dowley*, 483 A.2d 698, 700 (Me.1984)).

■ The trial court's instruction presents three concepts: 1) if a person occupies land by mistake without an intention to claim title to it, adverse possession is unavailable; 2) if a person occupies land by mistake, his intention to claim title must be absolute and not conditional in order to acquire title by adverse possession; and 3) it is not the existence of the mistake, but the presence of the requisite intention to claim title that is determinative. None of these concepts depart from our previous decisions on this subject.[1] Therefore, we find no error.[2]

■ Second, Crosby argues that the court incorrectly reinstructed the jury. After they had begun deliberating, the jury twice asked for reinstruction on adverse possession. The first time, the trial court read back the origi-nal charge. However, the second reinstruction was as follows:

Now, the law of adverse possession involves two entirely separate concepts, one concept of adverse possession is with respect to large parcels of land, the second concept relates to boundaries. This is a boundary dispute adverse possession case, in which case you must look at not only the objective criteria that exists for reasoning to a conclusion on adverse possession but also to the subjective state of mind of the adverse possessor.

When a person occupies land either himself or through his predecessors for more than 20 years, land which is not covered by that person or that person's predecessor's deed without a specific intention to claim title beyond the actual boundary fixed by the deed, wherever that may be, that person does not acquire adverse possession to land beyond the deeded line, there must be a subjective intent to adverse possess, in addition to the specific criteria of adverse possession. Unless that is done the possession is not adverse to the true owner and if it is not adverse to the true owner then the deeded line controls.

Saying again what I said earlier the presence or absence of the intention to claim that which is not covered by the deed fixes the character of adverse possession.

Crosby claims that this instruction, in essence, directed the jury to find for Baizley on the adverse possession claim. We find no error in this instruction. *See* supra note 1.

## BOUNDARY BY ACQUIESCENCE

■ The party claiming title by acquiescence bears the burden of proof by clear and convincing evidence.... Thus, we review the record to determine whether the [fact finder] reasonably could have been persuaded that the elements of title by

1. *Emerson v. Maine Rural Missions Ass'n*, 560 A.2d 1, 3 (Me.1989); *McMullen*, 483 A.2d at 700; *Tallwood Land & Development Co. v. Botka*, 352 A.2d 753, 756 n. 2 (Me.1976); *Preble v. Maine Cent. R.R. Co.*, 27 A. 149, 150 (Me.1893); *see* Caspar F. Cowen, *Maine Real Estate Law and Practice* § 711 (Supp.1993).

2. Recently, the Legislature enacted 14 M.R.S.A. § 810–A (Supp.1993) ("If a person takes possession of land by mistake as to the location of the
true boundary line and possession of the land in dispute is open and notorious, under claim of right, and continuous for the statutory period, the hostile nature of the claim is established and no further evidence of the knowledge or intention of the person in possession is required."). Although this statute deals with "mistake" in adverse possession cases, the legislature expressly provided that it apply only to actions filed after October 13, 1993.

acquiescence were established to a high degree of probability.

*Marja Corp. v. Allain,* 622 A.2d 1182, 1184 (Me.1993) (citations omitted).

... [T]he elements that must be proved by clear and convincing evidence in order to establish a boundary by acquiescence ... are:

1) possession up to a visible line marked clearly by monuments, fences or the like;

2) actual or constructive notice to the adjoining landowner of the possession;

3) conduct by the adjoining landowner from which recognition and acquiescence not induced by fraud or mistake may be fairly inferred;

4) acquiescence for a long period of years such that the policy behind the doctrine of acquiescence is well served by recognizing the boundary.

*Davis v. Mitchell,* 628 A.2d 657, 660 (Me. 1993) (citing *Marja,* 622 A.2d at 1184; *Calthorpe v. Abrahamson,* 441 A.2d 284, 289 (Me.1982)). Baizley argues that the first element has not been met. First he claims that Crosby has presented no evidence showing that the hayfield was mowed consistently to create a recurring "visible line." Second, he claims that the mowing line lacks sufficient permanence to be a line "marked clearly by monuments, fences or the like." Third, Baizley argues that Crosby failed to show *possession* up to a visible line.

In *Calthorpe,* 441 A.2d at 289–90, we enunciated, for the first time, the elements of acquiescence and articulated the first element as "possession up to a visible line marked clearly by monuments, fences or the like." *Calthorpe* held that the claimant failed to show a "visible line." Even though struc-

tures had been erected on the disputed parcel and both parties used the disputed parcel sporadically, we concluded that "[such evidence] does not indicate where the boundary was meant to be." *Id.* at 290. In *Calthorpe,* we distinguished its facts from "the typical dispute involving the significance of a fence *or some other structure commonly used to indicate a boundary line.*" *Id.* (emphasis added). Since *Calthorpe,* we have twice found the existence of a "visible line."[3] In this instance, we conclude, as a matter of law, that the edge of Baizley's hayfield is not a visible line marked clearly by monuments, fences *or the like.* In *Calthorpe,* 441 A.2d at 289–90, we equated "or the like" with "some other structure commonly used to indicate a boundary line." (*Id.* at 290). Examples of other structures commonly used to indicate a boundary line were recognized in *Marja,* 622 A.2d at 1184 (old roadway was "visible line" establishing boundary) and *Davis,* 628 A.2d at 657 (remains of hedge between properties was "visible line" establishing boundary). However, in this case, the edge of Baizley's hayfield does not rise to the level of "some other structure commonly used to indicate a boundary line."[4] This is especially so where the party responsible for the haying is not the party asserting the acquiescence claim. Thus, we vacate the portion of the judgment finding in favor of Crosby on acquiescence.[5]

The entry is:

Judgment vacated. Remanded for entry of a judgment for the defendants.

All concurring.

---

3. *Davis,* 628 A.2d 657 (holding that the remains of a barberry hedge constituted a "visible line" where the parties continued to treat the boundary as being in line with the remains of the hedge and where the losing party had admitted to the boundary being as such); *Marja,* 622 A.2d 1182 (upholding a referee's finding of a clearly marked visible line where the line was "an old roadway readily discernible visually by the edge of vegetation and the remains of fences and stone walls"; was located on maps submitted in evidence; and had "not changed except in minor detail for approximately 20 years.").

4. Because we conclude that, as a matter of law, the first element of the doctrine of boundary by acquiescence has not been met, we need not discuss whether the other three elements have been proven. In particular, we decline to decide whether the "long period of years" referred to in the fourth element must be at least the 20 years applicable to adverse possession claims. 14 M.R.S.A. § 801 (1980).

5. Because Crosby does not prevail on his claim for adverse possession or acquiescence, we need not address his remaining contentions on this appeal.