1998 ME 175

**BAPTIST YOUTH CAMP**

v.

**Clifford ROBINSON, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 15, 1998.
Decided July 17, 1998.

William S. Silsby, Jr., Silsby & Silsby, Ellsworth, for plaintiff.

John F. Logan, Logan, Kurr & Hamilton, Bangor, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] Clifford and Barbara Robinson appeal from a judgment entered in the Superior Court (Washington County, *Marsano, J.*) declaring the location of the boundary line between properties owned by the Robinsons and the Baptist Youth Camp. The Robinsons contend that: (1) the evidence does not support the boundary established by the court; (2) the court erred in concluding that the Robinsons failed to prove adverse possession of the area of land in dispute; and (3) the court erred by failing to find that they established an easement by prescription. Although we are required to slightly modify the declaratory judgment to clarify the description of the property, we affirm the judgment as modified.

[¶ 2] The parties own adjacent parcels on the shore of Pennamaquon Lake in Charlotte. Before 1994, the recreational use of the now-disputed area was shared without incident. From 1994 on, when the Robinsons began more intensive use of the area, disputes arose over the location of the boundary.

[¶ 3] The Camp brought this declaratory judgment action, requesting the court to establish the boundary line between the two properties. The Robinsons filed an answer and joined in the request that the boundary line be established, and in addition, asserted as defenses to the Camp's complaint that they have established title to the disputed area by adverse possession, and in the alternative, have a prescriptive easement.

[¶ 4] The Robinsons trace their title to a June 1946 deed from Lorestin Sinclair to Sadie Anderson. The conveyance in that deed contained the following description:

Starting at a point, marked by a stake, at the mouth of the Ohio Stream where said stream empties into Lake Pennamaquon thence Easterly along Lake Pennamaquon two hundred and ten feet (210) more or less to a stake; thence Southerly eighty-four (84) feet to a marked tree; thence at right angles Westerly to the Ohio Stream; thence along the Ohio Stream to the point of the beginning.

[¶ 5] Baptist Youth Camp traces its title to a September 1946 deed from Sinclair to Richard Buker. The Sinclair–Buker deed excepted from the conveyance the above-referenced lot Sinclair had previously conveyed to Sadie Anderson. Thus, the only description of the parties' common boundary is contained in the deed from Sinclair to Anderson, and that boundary must be located based on that description. A critical inquiry at trial was the identification and location of the purported boundary monuments mentioned in the deed, including the "mouth of Ohio Stream." The extent of the use of the disputed area by the parties over the decades was litigated as well.

[¶ 6] The parties presented surveyor witnesses who used the description in the Sinclair to Anderson deed and their observations on the ground to state their opinions as to the proper location of the boundary line. The court conducted a view of the premises. Following a nonjury trial, and making reference to a plan entitled "Plan for the Baptist Youth Camp, Pennamaquon Lake, Charlotte, Maine" that was before the court as plaintiff's exhibit # 3, the court declared the boundary of the Robinsons' property to be as follows:

Beginning at a point in the shore of Lake Pennamaquon at the northerly edge of the mouth of Ohio Brook at a point designated as 41 [as shown on Baptist Youth Camp Plan]: thence northerly, northeasterly and easterly, in the lake to a point just easterly of number 14 and over the character 6 of the number 26.65 [as shown on Baptist Youth Camp Plan] to a point in the lake;

thence southerly 84 feet to a point reached after passing through the asphalt walkway and westerly of the most southwesterly cedar shrub and easterly of power pole;[1] thence westerly at an interior right angle of 90° to the Ohio Brook; thence westerly by the brook to the point of beginning.

In addition to declaring the location of the Robinsons' boundary, the court found in favor of the Camp on the Robinsons' claim of title by adverse possession and their claim of prescriptive easement. The Robinsons then filed this appeal.

### I.

[¶ 7] Working from the deed description of the property owned by the Robinsons, the court determined the common boundary by identifying and locating the perimeters of the Robinsons' property. Determination of property boundaries as ascertained from a deed is a question of law. *Lawton v. Richmond*, 690 A.2d 953, 955 (Me. 1997). Where boundaries are on the face of the earth is a question of fact, and a trial court's findings of boundary locations are reviewed for clear error. *Id.* Such factual determinations must be affirmed on appeal unless "there is no credible evidence on the record to support them ... or ... the court bases its findings of fact upon a clear misapprehension of the meaning of the evidence." *Rhoda v. Fitzpatrick*, 655 A.2d 357, 360 (Me. 1995).

[¶ 8] The 1946 deed from Sinclair to Anderson describes the starting point of the property now owned by the Robinsons as "marked by a stake, at the mouth of the Ohio Stream where said stream empties into Lake Pennamaquon." The Robinsons contend that the starting point used by the court (a point designated on plaintiff's exhibit # 3 as "41"),

on which the remaining boundary determination very much depends, was incorrect. They argue that the true starting point is marked by a disturbed iron pipe shown on the survey they submitted in evidence. That pipe is located a considerable distance westerly and southerly of point "41." Rejecting the starting point urged by the Robinsons, and the opinion of their surveyor as to the location of the mouth of the Ohio Stream,[2] the court noted that the original description called for a stake, and not a pipe, and that the location of that disturbed iron pipe bore no relationship to any relevant identifying factor. "The weight to be given to the opinions of surveyors, as well as the credibility of any witness is the prerogative of the trier of facts." *Strout v. Gammon*, 629 A.2d 43, 45 (Me.1993) (quoting *Sargent v. Coolidge*, 399 A.2d 1333, 1339 (Me.1979)). The court did not err in locating the starting point in its description.

[¶ 9] The second call in the deed, the northeast corner of the Robinson property, is described in the original description as being marked by "a stake" located along Lake Pennamaquon "two hundred ten feet (210) *more or less*" from the point of beginning. (Emphasis added). The Robinsons contend that the court, in locating their northeast corner at a point in the lake about two hundred sixty feet (260) from where the court located the starting point, gave insufficient consideration to that distance call in the original deed. The contention is unpersuasive.[3] The stake referred to in the original deed was not located. Moreover, as the court noted, unlike the third call, which specifies an *exact distance* and which the court's description was faithful to,[4] the second call is not an exact distance, but two hundred feet *more or less*. *See Theriault v. Murray*, 625 A.2d 908,

---

1. The asphalt walkway, cedar shrubs and power pole are depicted on the Baptist Youth Camp Plan.

2. Nor did the court accept the conclusion of the Camp's surveyor that the point of beginning in the 1946 deed description is located midway across the 62–foot channel of the Ohio Brook. The adoption of that location as the point of beginning would have resulted in a boundary much more favorable to the Camp.

3. The distance of two hundred ten (210) feet urged by the Robinsons was irreconcilable with the description as a whole and its use would have resulted in a boundary less favorable to the Robinsons.

4. The third call in the court's description, southerly eighty-four (84) feet, adheres to the original description, as do the fourth and fifth calls, "at a right angle of 90° to the Ohio Brook; thence westerly by the brook to the point of beginning."

910 (Me.1993) (more precise distances and courses would govern where less clear call in deed was for "28 rods more or less").

■ [¶ 10] In its determination of the location of the Robinson boundaries, the court noted the unreliability of the monuments named in the original deed description, and placed more reliance on the geographic boundaries of the stream and the lake. We have recognized that artificial monuments are easily removed, and when their reliability is in question reference to them may be eliminated by a court locating a boundary in a declaratory judgment action. *Theriault v. Murray*, 625 A.2d 908, 910 (Me.1993). In this case several of the monuments referred to in the deed, namely stakes and a tree, could not be reliably identified. The court was justified in describing the property without mention of those deed-referenced monuments, and instead relying on other monuments, including Lake Pennamaquon, the Ohio Brook, numbers on a recordable plan that was used as a trial exhibit,[5] and an asphalt walkway, a cedar shrub, and a power pole that are shown on the plan, and are identifiable on the ground. *Id.*

[¶ 11] The description used by the court to locate the boundary is not completely clear, however, in that the northeast corner of the Robinson property is described as being located over the character 6 of the numbers 26.65, as located on the "Plan for the Baptist Youth Camp," plaintiff's exhibit # 3. To reconcile the location of that north-east corner with the third and fourth calls in the court's description, including references to monuments in those calls, the description must be clarified to reflect that the northeast corner of the Robinson property is located over the westernmost character 6 of the numbers 26.65. Aside from this minor clarification, the description of the boundary as located by the court is supported in the evidence,[6] and is not clearly erroneous. *See Perkins v. Graves*, 642 A.2d 1349, 1350 (Me. 1994) (trial court's drawing of the boundaries was not erroneous where it followed standard rules of construction and was consistent with the language of the deed and the intentions of the parties).

## II.

■ [¶ 12] The Robinsons also contend that the court erroneously rejected their claim of ownership of the disputed area based on adverse possession, 14 M.R.S.A. § 810–A (Supp.1997),[7] as well as their claim of prescriptive easement. Because the Robinsons had the burden of proof on those claims, we will disturb the court's conclusions that the claims were not proven only if the evidence compels contrary conclusions. *Dawson v. Lussier*, 632 A.2d 128, 129 (Me. 1993). Our review of the record discloses that the court was not compelled to conclude that the Robinsons prevailed under either theory.

5. The Camp's plan to which the court's description makes reference is not recorded in the Registry of Deeds. If a deed description makes reference to monuments or markings shown on a plan, it is preferable that the plan be recorded. Moreover, the parties would be well advised to prepare a recordable plan reflecting the boundaries described in the judgment.

6. The Robinsons also contend the court erred in excluding, pursuant to M.R. Evid. 408(a), evidence that the surveyor for the Camp, in a failed effort to resolve the dispute of the location of the boundary, placed pins on a line the Robinsons now assert is the proper boundary. The court found numerous deficiencies in the Robinsons' boundary location evidence and any error in excluding the evidence was harmless.

7. Title 14 M.R.S.A. § 810–A provides in pertinent part:

**Mistake of boundary line establishes hostility**
If a person takes possession of land by mistake as to the location of the true boundary line and possession of the land in dispute is open and notorious, under claim of right, and continuous for the statutory period, the hostile nature of the claim is established and no further evidence of the knowledge or intention of the person in possession is required.
*See Cates v. Smith*, 636 A.2d 986, 988 n. 4 (Me. 1994) ("We note that the Legislature has recently removed the requirement that the claimant have the specific intent to claim the land of another as articulated in *Landry [v. Giguere*, 127 Me. 264, 143 A. 1 (1928)]* and *McMullen [v. Dowley*, 483 A.2d 698 (Me.1984)]*. P.L.1993, ch. 244, 1 (codified at 14 M.R.S.A. § 810–A (Supp.1993)) (effective Oct. 13, 1993).").

■ [¶ 13] The court found that the parties and their predecessors engaged in "mutual use [of the area now in dispute] which was to accommodate each other up until the dispute." The evidence demonstrates that since 1946, the parties had tolerated each other in the disputed area even though the exact location of the boundary was not known. Although 14 M.R.S.A. § 810–A no longer requires adverse possession claimants to have the specific intent to claim the land, nevertheless they must establish possession by "an actual use and enjoyment of the property which is in kind and degree the same as the use and enjoyment to be expected of the average owner of such property." *Howe v. Natale,* 451 A.2d 1198, 1200 (Me.1982). The court found the degree of deference to the Camp activities by the Robinsons and their predecessors to be greater than would be shown by an average owner. Accordingly, the court was not compelled to conclude that the Robinsons used the area in dispute in a manner sufficient to establish title by adverse possession. *See Gammon v. Verrill,* 651 A.2d 831, 832–33 (Me.1994) (claimant must establish elements "by clear proof of acts and conduct fit to put a [person] of ordinary prudence, and particularly the true owner, on notice, that the estate in question is actually, visibly and exclusively held by a claimant in antagonistic purpose").

■ [¶ 14] Likewise, the court was not compelled to conclude that the Robinsons established a prescriptive easement in the disputed area.[8] Having failed to persuade the court on their claim of adverse possession, the Robinsons could not satisfy the greater requirements for establishing an easement by prescription. "[T]he party asserting an easement by prescription must prove continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or a

use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. *Acquiescence by the owner to the use is essential, and in this regard, the acquisition of an easement by prescription differs from the acquisition of title by adverse possession."* *Shadan v. Town of Skowhegan,* 1997 ME 187, ¶ 6, 700 A.2d 245, 247 (emphasis added).[9] The court's adequately supported findings in regard to how the property was used preclude that acquiescence: The court found that "the use by the Plaintiff is consistent with its camp activities and was sufficient to indicate the camp's claim and ... was adequate to interrupt any claimed adverse user on the beach." Those findings, adequately supported in the record, preclude the Camp's acquiescence to the requisite use of the land by the Robinsons to establish a prescriptive easement.

The entry is:

Judgment is modified to the extent that the reference in the description in the judgment to "character 6 of the numbers 26.65" is clarified to read "the westernmost character 6 of the numbers 26.65." As modified, judgment affirmed.

---

8. Although the Robinsons contend that the court did not separately address the Robinsons' claim of a prescriptive easement, the court's judgment provides:
> The Court finds from the evidence that there has been no adverse user for a sufficient period of time to *create estates* to the extent of Defendant's claim.... (Emphasis added).

Moreover, the Robinsons did not request additional findings of fact or conclusions of law.

They cannot be heard to complain on appeal that their prescriptive easement claim was not addressed by the court.

9. *See also Falvo v. Pejepscot Indus. Park, Inc.,* 1997 ME 66, ¶ 13, 691 A.2d 1240, 1244 ("A claimant asserting a prescriptive easement must prove that the true owner knew of the adverse claim and acquiesced.").