*1998 ME 230*

**Michael R. COOMBS**

v.

**Hoyt GRINDLE et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 2, 1998.

Decided Oct. 21, 1998.

John L. Carver, Carver, Kimball & Baiungo, Belast, for plaintiff.

Susan C. Thiem, Lincolnville, for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

DANA, Justice.

[¶ 1] Michael R. Coombs appeals from the judgment entered in the Superior Court (Waldo County, *Brodrick, A.R.J.*) locating the boundary between his property and that of Hoyt and Pamela Grindle. On appeal, Coombs argues that the trial court's boundary determination was clearly erroneous. We affirm the judgment.

[¶ 2] In 1883, out of his 20–acre parcel William Dodge conveyed a one-acre lot to his son, Silas Dodge, as follows:

Beginning at a stake and stones standing on the westerly side of the highway; thence northwesterly one hundred ninety-eight (198) feet to a stake and stones; thence northeasterly parallel with the town way two hundred twenty (220) feet to a stake and stones; thence southeasterly one hundred ninety (190) feet to a fir tree at the town way; thence southwesterly by the town way two hundred twenty (220) feet to

the first mentioned bound. Containing one (1) acre.

This lot was purchased by the Grindles in 1982. Today, the monuments referenced in the Grindles' deed—the three "stake and stones" and the fir tree—have disappeared.

[¶ 3] William Dodge conveyed the remaining 19 acres to Gilford Pendleton in 1891, noting that he was "reserving one acre to Silas Dodge where his house now stands." In 1904, Pendleton conveyed less than an acre to Myrtle B. Smith, which lot Coombs purchased in 1977.[1] Because the Grindles' lot was created first and the first boundary of the Coombs's lot is along the Grindles' lot, the senior parcel is a monument for the junior one.[2] See Snyder v. Haagen, 679 A.2d 510, 514 (Me.1996) ("When a deed describes the land conveyed by reference to an adjoining tract, the boundary line of the adjoining tract referred to becomes a monument to which courses, distances and quantity must yield.").

[¶ 4] Coombs hired Michael Shaffer to survey his property, and Shaffer's findings contradicted the parties' original understanding of where their common boundary was located. Shaffer concluded that the line ran through the middle of the Grindles' home. Richard Day, a second surveyor hired by Coombs, confirmed Shaffer's findings.

[¶ 5] The Grindles' surveyor, Daniel Small, Jr., determined the location of the Grindles' property by examining the chains of title of both the Coombs's and the Grindles' lots, comparing the boundaries set forth in a 1929 deed description of land bordering the Grindles' lot, speaking with long-time residents regarding the location of the Silas Dodge property, and determining that an old 1¼ inch iron pipe in the northernmost corner of the Grindles' lot served as a replacement monument for missing "stake and stones."

[¶ 6] The trial court adopted Small's reasoning and findings and rejected the opinions of the Coombs's surveyors, finding that their boundary determinations—which placed the remains of Silas Dodge's home on Coombs's property instead of on the Grindles' property—were inconsistent with the intent of William Dodge. Coombs appeals from the judgment and argues that there is insufficient evidence to support the trial court's boundary determinations.

## I. BOUNDARY DETERMINATIONS

[¶ 7] The court's determination of property boundaries as ascertained from a deed is a question of law. Baptist Youth Camp v. Robinson, 1998 ME 175, ¶ 7, 714 A.2d 809, 812. Where boundaries are, however, on the face of the earth is a question of fact, and a trial court's findings of boundary locations are reviewed for clear error. Id. This Court will affirm the trial court's findings on appeal unless "there is no credible evidence on the record to support them ... or ... the court bases its findings of fact upon a clear misapprehension of the meaning of the evidence." Id. (quoting Rhoda v. Fitzpatrick, 655 A.2d 357, 360 (Me.1995)). We find neither situation here.

[¶ 8] First, the court concluded that Silas Dodge's home stood on the original one-acre parcel of land conveyed to him by his father. William's original conveyance to Silas and his later reservation in the 1891 Pendleton deed of "one acre to Silas Dodge where his house now stands" supports this conclusion. The court reasoned that the location of Silas Dodge's house would assist the court in determining the location of the Grindles' property.

---

1. Coombs's parcel is described in his deed as follows:

   Beginning at a stake and stone standing on the westerly side of the town road and at land of the late Silas Dodge thence North fifty nine degrees West (N. 59° W.) by said Dodge's land one hundred ninety (190) feet to a stake and stone; thence South thirty degrees West (S. 30° W.) or parallel with the town road one hundred and seventy (170) feet, more or less, to land of the late Isaiah Boardman; thence east-erly by said Boardman's land to the town road; thence northeasterly as said road runs to first mentioned bound. Containing one hundred and nine and one half (109½) square rods, more or less.

2. The starting point for the deed descriptions— the "stake and stones" on the "westerly side" of Main Road—is the same for the Coombs's deed and the Grindles' deed.

[¶ 9]  Second, the court's findings that Silas's house was 20 feet from the Grindles' home, his barn was 70 feet from the Grindles' home, his well was next to his barn, and a circular driveway was in front of his house were supported by: (1) aerial photographs from 1939, 1966, and 1972 indicating that Silas maintained two structures and a well on the land just to the southwest of where the Grindles' home now stands; (2) Joyce Yeaton, Silas's granddaughter, who told Small that her recollection regarding the Dodge land was consistent with Small's determination of the location of Dodge's house; (3) Charles Quimby, Sr., a long-time resident of Islesboro, who testified that his recollections concerning the location of the Silas Dodge house, barn, and well in 1914 were consistent with Small's determinations; (4) Dale Hatch, Grindles' predecessor in title and the great-grandson of Silas Dodge, who testified that the Dodge family house stood on the land when he received title to the land; and (5) Bruce Van Note, another surveyor hired by the Grindles, who testified that he observed evidence of a well on the property just southwesterly of where the Grindles' house now stands.

[¶ 10]  Third, the court's finding that an old 1¼ inch iron pipe was a replacement monument for the missing "stake and stones" in the northernmost corner of the Grindles' property directly corroborates, and is consistent with, the court's conclusions regarding the boundaries of the Grindles' land. *See Theriault v. Murray*, 588 A.2d 720, 722 (Me. 1991) (the physical disappearance of a monument does not terminate its status as a boundary marker if the court can ascertain its location through other probative evidence).

[¶ 11]  Small determined that the iron pipe was a replacement monument for the missing "stake and stones" by reviewing other probative evidence.  Small reviewed a 1968 survey sketch by Henry Hatch, a deceased Islesboro surveyor, who surveyed Harlan Pendleton's land that bordered the Grindles' land to the northeast.  Hatch's survey sketch referenced an iron pipe as the monument for the westernmost corner of the Pendleton property (the northernmost corner of the Grindles' property).  Small also reviewed a 1929 deed describing land that bordered the Grindles' land from the Grindles' easternmost corner to the Grindles' northernmost corner, and from the northernmost corner to the Grindles' westernmost corner.  The 1929 deed, like the 1968 Hatch survey sketch, refers to an iron pipe in the northernmost corner of the Grindles' property.  In addition, the 1929 deed description corresponded with Small's determination regarding the location of the westernmost corner of the Grindles' land, where Small found another iron pipe, lying under the ground and covered by moss, that he considered a "disturbed monument" but nevertheless a "clue" to the location of the westernmost corner.  Finally, Jude Berry, the predecessor in title to Coombs's property, testified that the Coombs's land was "pie-shaped," a finding consistent with Small's boundary determinations and inconsistent with boundaries proposed by Coombs's surveyors.  The court's finding that the iron pipe served as a replacement monument was not clearly erroneous.

## II.  THE 1968 SURVEY SKETCH

[¶ 12]  Coombs argues that the trial court considered Hatch's 1968 survey sketch as substantive evidence after the court admitted the sketch for the limited purpose of demonstrating that Small relied on it to prepare his survey.  The court's opinion states that "[w]hen a man like Mr. Hatch, who as Mr. Day noted was *the* surveyor for Islesboro, designated a monument as a boundary marker on an island that is *his* island, it seems unlikely that he would have been wrong." (Emphasis in original.)

[¶ 13]  Contrary to Coombs's contention, the trial court did not rely on the Hatch survey sketch as substantive evidence.  The court's finding merely reflects the testimony of the expert surveyors in this case who themselves consulted the Hatch survey sketch in determining the boundaries.  See *Department of Envtl. Protection v. Woodman*, 1997 ME 164, ¶ 5, 697 A.2d 1295, 1298 (recognizing that experts may rely on inadmissible evidence to support their opinion if it is the kind of evidence commonly relied on by experts).  Specifically, the court relied on

Day's testimony that Hatch, in the course of his survey, designated an iron pipe as a monument in the area near where Small found the old 1¼ inch pipe. Both Day and Small reviewed the Hatch survey sketch, discussed the survey sketch with Hatch, and acknowledged that Hatch served as the local Islesboro surveyor for many years. The trial court, therefore, did not commit error.

The entry is:

Judgment affirmed. .