2004 ME 137

**ANCHORAGE REALTY TRUST**

v.

**Brendan K. DONOVAN et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: March 24, 2004.

Decided: Nov. 8, 2004.

Alan S. Nelson, Prescott Lemoine Jamieson & Nelson, L.L.C., Saco, Thomas S. Coward, South Portland, for plaintiff.

Alan E. Shepard, Shepard & Read, Kennebunk, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] Brendan K. and Marion L. Donovan appeal from the summary judgment entered in the Superior Court (York County, *Fritzsche, J.*) in favor of Anchorage Realty Trust. The court determined, based on the parties' statements of material facts, that Anchorage has established by acquiescence the legal boundary line between the Donovan and Anchorage properties. Because we agree with the Donovans that, pursuant to M.R. Civ. P. 56(c), there are genuine issues of material fact as to the elements of boundary by acquiescence that remain in dispute, and that a finding that those elements have been established by clear and convincing evidence is not compelled by the parties' statements of material facts, we vacate the summary judgment.

## I. BACKGROUND

[¶ 2] The facts in this boundary dispute case, as outlined by the parties' statements of material facts and other documents referred to within the statements, reveal the following:

[¶ 3] In November of 1959, Ronald and Elaine DiCesare purchased property known as the Anchorage Inn, which they operated as a commercial inn. The DiCesares later conveyed the property to Anchorage Realty Trust.[1] Elaine DiCesare is the sole beneficiary of the trust.

[¶ 4] At the time of the purchase, a white picket fence stood between the DiCesares' property and the adjacent property, now owned by the Donovans. The DiCesares assert that they treated the location of the fence as the boundary between the two properties. This fence was in the same location for the entire time the DiCesares owned the property and from at least 1958, when the adjacent property was owned by the Wakelings. An old photograph on a postcard of the property, taken in the 1920s or 1930s, shows the fence in the same or a similar location. The fence remained in the same location until it was removed by the Donovans in October of 2002.

[¶ 5] In 1982, the Wakelings sold their property to the Donovans. A land survey done for the Donovans in 1988 revealed that the white picket fence was located on the Donovans' property. The Donovans assert that Ronald DiCesare had approached the surveyor "to attempt to dissuade him from identifying our common boundary line in its location as set forth in the two deeds." DiCesare told the surveyor that the white picket fence had been located in the same spot for about thirty years. The surveyor noted on the survey plan that DiCesare claimed a boundary line different than that recorded on the deed.

[¶ 6] In July of 1988, the Donovans' attorney sent the DiCesares a letter notifying them of the encroachment of the fence on the Donovan property and asking the DiCesares to remove the portion of the fence located on the Donovans' property. The Donovans further assert that sometime after the letter was delivered, Brendan Donovan and Roland DiCesare agreed

---

1. Ronald DiCesare is deceased.

that the DiCesares did not have to remove the fence for the time being "as long as [the DiCesares] clearly understood that [their] common boundary line was as described in both of our deeds and as shown on the 1988 survey plan."

[¶ 7] In August of 2000, the Donovans' dog was attacked and injured by the DiCesares' dog. After the incident, Brendan Donovan wrote to Elaine DiCesare informing her of the attack and stating that if she failed to keep her dog "under strict control," he would erect a fence. In the summer of 2002, the Donovans began to erect a high fence along their common property line, and in doing so, removed a portion of the white picket fence.

[¶ 8] Anchorage filed a complaint on November 25, 2002, which it later amended seeking a declaratory judgment and other relief.[2] The Donovans filed a counterclaim for a declaratory judgment. The court entered a partial summary judgment in favor of Anchorage as to Counts I and III of its complaint, declaring that Anchorage had established the boundary by acquiescence at the location of the fence.

[¶ 9] On September 29, 2003, the parties filed a stipulation dismissing Counts II, IV, and V of Anchorage's amended complaint, as well as the Donovans' counterclaim "without prejudice and without costs to either party."

[¶ 10] The Donovans filed this appeal.

## II. ANALYSIS

 [¶ 11] We review an entry of summary judgment de novo, *Benton Falls Assocs. v. Cent. Me. Power Co.*, 2003 ME

99, ¶ 10, 828 A.2d 759, 762–63, and "examine the evidence in the light most favorable to the nonprevailing party to determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law," *Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 5, 711 A.2d 842, 844. In testing whether summary judgment is proper, "we accept as true the uncontroverted facts properly appearing in the record." *Id.* In order to establish a boundary by acquiescence, a party must prove:

(1) possession up to a visible line marked clearly by monuments, fences or the like;

(2) actual or constructive notice to the adjoining landowner of the possession;

(3) conduct by the adjoining landowner from which recognition and acquiescence not induced by fraud or mistake may be fairly inferred;

(4) acquiescence for a long period of years such that the policy behind the doctrine of acquiescence is well served by recognizing the boundary.

*Dowley v. Morency*, 1999 ME 137, ¶ 16, 737 A.2d 1061, 1067.

 [¶ 12] The establishment of a boundary by acquiescence requires proof by clear and convincing evidence. *Id.* Evidence is considered to be "clear and convincing" when it "place[s] in the ultimate fact[-]finder an abiding conviction that the truth of [the party with the burden of proof's] factual contentions are 'highly probable.'" *Taylor v. Comm'r of Mental Health and Mental Retardation*, 481 A.2d 139, 153 (Me.1984) (citations omitted).

---

**2.** Count I of Anchorage's complaint seeks a declaratory judgment that the boundary between the parties had been established at the location of the white picket fence; Count II alleges trespass and conversion for Brendan Donovan's removal of the fence; Count III seeks injunctive relief against the Donovans; Count IV asserts intentional infliction of emotional distress by the Donovans; and Count V, added by amendment, asserts that Anchorage established title to the property by adverse possession.

[¶ 13] The statements of material facts reveal that there is sufficient evidence in the record on which a fact-finder *could* base a finding that Anchorage has established a boundary by acquiescence at the location of the white fence. Anchorage has presented evidence that the fence is clear and visible and has been in the same location between the Anchorage and Donovan property for a long period of years; that the Donovans and their predecessors in title have had actual notice that Anchorage and its predecessors in title have been in possession of the land up to the fence; that the Donovans and their predecessors in title have recognized and acquiesced in the fence as being the boundary; and that the acquiescence was for a sufficiently long period of years so that the policy behind the doctrine of acquiescence would be well served by the court's recognition of the boundary. *See Dowley,* 1999 ME 137, ¶ 16, 737 A.2d at 1067.

[¶ 14] Contrary to the contention of the Donovans, "[a] boundary by acquiescence may be proven even where the deed description is clear and the legal boundary is known." *Id.* Moreover, "[t]he distinguishing feature of acquiescence is that proof of an agreement to locate and fix a boundary on a certain line is not required," as the Donovans assert. *Calthorpe v. Abrahamson,* 441 A.2d 284, 288 (Me.1982).

[¶ 15] This case, however, is not on appeal from a trial court decision following an evidentiary hearing, nor from a decision based on an agreed statement of facts. This is an appeal from a summary judgment entered pursuant to Rule 56 in favor of Anchorage, the plaintiff, whose burden it is to convince a fact-finder by clear and convincing evidence, i.e., to a high probability, the truth of the elements necessary to establish a boundary by acquiescence are highly probable. *Taylor,* 481 A.2d at 153. For Anchorage to be entitled to a summary judgment, there can be no genuine issue of material fact. The facts set out in the statements of material facts must establish that Anchorage would be entitled to a judgment as a matter of law, *see* M.R. Civ. P. 56(c), and that a fact-finder would be *compelled* to find it highly probable that those elements have been established. Although there is ample evidence from which the elements of boundary by acquiescence could be found, the Donovans have presented evidence in opposition to the motion for a summary judgment that the DiCesares were aware that the fence did not represent the true boundary between the properties, and that some of their actions were inconsistent with the establishment of a boundary by acquiescence. Because the finding of the establishment of boundary by acquiescence to a clear and convincing evidence standard is not compelled, we vacate the summary judgment.

The entry is:

Judgment vacated. Case remanded to the Superior Court for further proceedings consistent with this opinion.