2008 ME 130

David E. HAMLIN

v.

Leslie NIEDNER Jr. et al.

Supreme Judicial Court of Maine.

Submitted on Briefs: June 30, 2008.

Decided: Aug. 26, 2008.

John R. Lemieux, Esq., Shari Sobel, Esq., Desmond & Rand, P.A., Westbrook, ME, for Leslie Niedner and Nancy Niedner.

Dennis L. Jones, Esq., Law Office of Dennis L. Jones, Farmingdale, ME, for David Hamlin.

Panel: SAUFLEY, C.J., CLIFFORD, ALEXANDER, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] Leslie and Nancy Niedner appeal from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) finding that David E. Hamlin obtained title to a disputed parcel of land by either acquiescence or adverse possession. The Niedners argue that the court's findings are contradictory and are not supported by the record. Because the findings are contradictory and there is insufficient evidence to support a finding of either title by adverse possession or title by acquiescence, we vacate and remand for entry of judgment in favor of the Niedners.

## I. CASE HISTORY

[¶ 2] In February 2007, David Hamlin filed a complaint to quiet title pursuant to

14 M.R.S. § 6651 (2007) and remove any cloud from the title to his land and a portion of land deeded to the Niedners but claimed by Hamlin. Hamlin alleged that he had owned his land for four years and that his predecessors-in-title had acquired title to the Niedners' land by adverse possession. The Niedners denied this allegation; sought to dismiss Hamlin's complaint; and counterclaimed, seeking a declaratory judgment, pursuant to 14 M.R.S. § 5954 (2007), and to quiet title.

[¶ 3] Following a bench trial, the court found that between 1937 and 1987, both Hamlin's land and the Niedners' land were owned by members of one family. The court also found that the property line between the parcels was "clearly established" by a plan from a boundary survey, dated July 20, 2006. The boundary survey indicated a triangular area of disputed title, which the court found had been deeded to the Niedners.

[¶ 4] The court stated that there was evidence "in favor of occupancy and against occupancy by both parties." The court also found that "at least from 1937 until the [Niedners'] property was conveyed to Wheeler [in September 1987], the disputed area was occupied primarily by [Hamlin's] predecessor-in-title without dispute by those in the [Niedners'] chain of title" and that the land was used for family and agricultural uses and "general occupation consistent with residential use."

[¶ 5] The court found that Hamlin's predecessors-in-title were not put on notice of a potential dispute regarding the land until 1987.[1] The court impliedly found that the "familial and friendly relationship" between the parties' predecessors-in-title did not defeat the element of hostility required for adverse possession. The court questioned, however:

what . . . it [should] do with its finding that during the period from 1937 to 1987 both sides to the deeded boundary line mistakenly thought that the boundary was in the area occupied by [Hamlin's] predecessor-in-title?[2] This court can only conclude from all of the evidence that the [Niedners'] predecessor-in-title concurred in the occupancy of the land contrary to its deeded title and therefore permission for said occupancy is to be inferred.

The court indicated that the "answer is a doctrine neither presented nor argued by either party" and went on to describe the elements of title by acquiescence. The court then concluded that Hamlin's "predecessors-in-title have occupied the land in question with the acquiescence of the [Niedners'] predecessor-in-title or by mistake resulting in title by adverse possession."

[¶ 6] The Niedners filed this appeal.

## II. LEGAL ANALYSIS

### A. Title by Acquiescence

[¶ 7] We review factual findings for clear error and conclusions of law

1. Before Wheeler, a non-family member who sold the Niedners their property, took possession, the land was owned by various members of David Hamlin's family. These family members did not try to exercise control over the area that later became disputed and led to this litigation.

2. David P. Hamlin, Hamlin's father, testified that the deeds of conveyance from a 1968 transfer between Philip Hamlin, Hamlin's grandfather and predecessor-in-title, and Raymond Loubier, Hamlin's great-uncle and a predecessor-in-title of the Niedners, did not match the intent of the parties. Additionally, there was testimony that after the transfer of deeds, the parties continued to use the disputed land as they always had. The court appears to base its finding on the assumption that there was a mistake in this testimony.

based on those findings de novo. *In re Beauchene*, 2008 ME 110, ¶ 7, 951 A.2d 81, 84. To prove that title or a boundary line is established by acquiescence, a plaintiff must prove four elements by clear and convincing evidence: (1) possession up to a visible line marked clearly by monuments, fences or the like; (2) actual or constructive notice of the possession to the adjoining landowner; (3) conduct by the adjoining landowner from which recognition and acquiescence, not induced by fraud or mistake, may be fairly inferred; and (4) acquiescence for a long period of years, such that the policy behind the doctrine of acquiescence—that a boundary consented to and accepted by the parties for a long period of years should become permanent—is well served by recognizing the boundary. *Anchorage Realty Trust v. Donovan*, 2004 ME 137, ¶¶ 11–12, 880 A.2d 1110, 1112; *Crosby v. Baizley*, 642 A.2d 150, 153–54 (Me.1994).

[¶ 8] Evidence is "clear and convincing" when it places in the ultimate fact finder an "abiding conviction" that it is "highly probable" that the factual contentions of the party with the burden of proof are true. *Anchorage Realty Trust*, 2004 ME 137, ¶ 12, 880 A.2d at 1112; *Taylor v. Comm'r of Mental Health & Mental Retardation*, 481 A.2d 139, 153 (Me.1984). The court's contradictory findings that prior occupancy of the disputed land was by both mistake and permission indicate something less than an "abiding conviction" that the key element of acquiescence was proven to be "highly probable."

[¶ 9] Because the court found both parties' predecessors-in-title were mutually mistaken as to the boundary line, "permission for said occupancy" could not be inferred; and any actions indicating acquiescence were the result of a mistake, which cannot form the basis of title by acquiescence. *See Anchorage Realty Trust*, 2004 ME 137, ¶¶ 11–12, 880 A.2d at 1112 (acquiescence cannot be induced or created by mistake). Additionally, to establish title by acquiescence, one must prove "possession up to a visible line marked clearly by monuments, fences or the like...." *Id.* Here, there was no evidence of any monuments, fences, or the like sufficient to put the true owner on notice of where the boundary was intended to be. Nor were there any structures in place commonly used to indicate a boundary line. *See Taylor v. Hanson*, 541 A.2d 155, 159 (Me.1988); *see also Dowley v. Morency*, 1999 ME 137, ¶ 16, 737 A.2d 1061, 1067 (holding mere cutting of grass insufficient); *Davis v. Mitchell*, 628 A.2d 657, 660 (Me.1993). Consequently, the record evidence, as interpreted by the court, is insufficient to support a finding of title by acquiescence.

B. Title by Adverse Possession

[¶ 10] "Adverse possession presents a mixed question of law and fact." *Dombkowski v. Ferland*, 2006 ME 24, ¶ 28, 893 A.2d 599, 606 (quotation marks omitted). "[W]hether the necessary facts exist is for the trier of fact, but whether those facts constitute adverse possession is an issue of law for the court to decide." *Id.*; *see Webber v. Barker Lumber Co.*, 121 Me. 259, 262, 116 A. 586, 587 (1922). A party claiming title by adverse possession has the burden of proving, by a preponderance of the evidence, that the "possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period." *Weeks v. Krysa*, 2008 ME 120, ¶ 12, 955 A.2d 234, 238, 2008 WL 2764566; *Wood v. Bell*, 2006 ME 98, ¶ 12, 902 A.2d 843, 848.

[¶ 11] The law generally disfavors findings of adverse possession, and "[t]here is every presumption that the occupancy is in subordination to the true title." *Striefel v. Charles–Keyt–Leaman P'ship*, 1999 ME 111, ¶ 4, 733 A.2d 984, 988. As a result, the party asserting adverse possession has the burden to prove all the necessary elements of adverse possession. *See Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶ 26, 804 A.2d 364, 372.

[¶ 12] The requirement that possession be "hostile" generally means that the "possessor does not have the true owner's permission to be on the land . . . ." *Wood*, 2006 ME 98, ¶ 13, 902 A.2d at 849. Although there is no requirement that a "heated controversy or a manifestation of ill will" exist, permission, either express or implied, negates the element of hostility and prevents acquisition of title by adverse possession. *Id.*; *see also Striefel*, 1999 ME 111, ¶ 13, 733 A.2d at 991. The court's conclusion that "permission for said occupancy is to be inferred" is inconsistent with the hostility prerequisite for an adverse possession claim.

[¶ 13] Further, when property is or has been held within one family, the burden of establishing hostility is greater. *See Totman v. Malloy*, 431 Mass. 143, 725 N.E.2d 1045, 1048–49 n. 5 (2000) (listing jurisdictions adopting a presumption of permission or requiring a heightened showing of hostility when a familial relationship exists); *see also* 3 AM.JUR. 2d *Adverse Possession* § 180 (2002) (discussing the general principle that stronger evidence of adverse possession, including a showing that the owner had clear, unequivocal notice, is required in matters involving family members); 4 HEBERT T. TIFFANY, REAL PROPERTY § 1190.1 (3rd ed. 1975 & Supp. 2000); 2 C.J.S. *Adverse Possession* § 128 (1972). When parties have a familial relationship, there must be clear proof of hostility and actual notice to the true owner to satisfy the hostility requirement and transfer title by adverse possession.

[¶ 14] Here, where the land was held within one family prior to 1987, there was no evidence of actual hostility or notice. Hamlin failed to meet his burden to demonstrate the requisite hostility element for the years prior to 1987. Because the land at issue only came into possession of a non-family member in 1987, fewer than twenty years before the boundary dispute arose, the record cannot support a finding of hostility for a period in excess of twenty years. *See Wood*, 2006 ME 98, ¶ 12, 902 A.2d at 848; *Me. Gravel Servs., Inc. v. Haining*, 1998 ME 18, ¶ 3, 704 A.2d 417, 418 (requiring all elements of possession and use be satisfied "for a period of at least twenty years"). Consequently, as a matter of law, there could be no acquisition of title by adverse possession.

The entry is:

Judgment vacated. Remand for entry of judgment for the Niedners.