STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss                          CIVIL ACTION
                                        DOCKET NO. CV-10-400
                                        *NM - CUM- 3/2/20*


PHILIP MORGAN,

        Plaintiff


        v.                              ORDER ON DEFENDANTS' MOTION
                                        FOR PARTIAL SUMMARY JUDGMENT
CYNTHIA MOLLUS and
ROGER TRIMBEY,

        Defendants and
        Third-Party Plaintiffs

        v.

TERRANCE EDWARDS,

        Third-Party Defendant


Before the court is the defendants' motion for partial summary judgment on counts I-III of the Plaintiff's complaint pursuant to M.R. Civ. P. 56. In his complaint, plaintiff Philip Morgan alleges: in count I, common law adverse possession; in count II, statutory adverse possession; and in count III, easement by prescription. For the following reasons, the defendants' motion for partial summary judgment is granted.

BACKGROUND

Defendants Cynthia M. Mollus and Roger S. Trimbey own, as joint tenants, real property located on Peak's Island, identified as 14 Ryefield Street. (Defs.' S.M.F. ¶ 1.) The property is identified on the City of Portland tax maps as Map 84, Block E, Lots 4 and 15. (Defs.' S.M.F. ¶ 2.) The plaintiff owns real property located on Peak's Island, identified as 8 Ryefield Street. (Defs.' S.M.F. ¶ 3.) Mr. Morgan's property is identified

1

on the City of Portland tax maps as Map 84, Block E, Lot 5. (Defs.' S.M.F. ¶ 3.)[1] Lot 4 is the subject of this dispute. To access the property on Lot 5, the plaintiff alleges that he and his predecessors use side stairs that are located on Lot 4 and have used Lot 4 to get from Ryefield Street to Casco Bay. (Pl.'s S. Add'l M.F. ¶¶ 12-14.) The plaintiff claims ownership of a portion of Lot 4 by adverse possession and a right to use an easement across Lot 4 by prescription. (Pl.'s Opp. S.M.F. ¶¶ 1, 4, 5.)

1. History of Lots 4 and 15

The City of Portland acquired Lot 4 by a tax taking on February 7, 1949 from Carrie J. Bates, who also owned Lot 5. (Defs.' S.M.F. ¶ 7.) The City of Portland conveyed Lot 4 to Elizabeth C. Sullivan by a December 12, 1968 deed. (Defs.' S.M.F. ¶ 6.)[2] John P. McKenzie and Elizabeth C. Sullivan owned Lot 15 as joint tenants until July 19, 1968 when John P. McKenzie conveyed Lot 15 to Elizabeth C. Sullivan. (Defs.' S.M.F. ¶¶ 8-9.) Elizabeth C. Sullivan devised Lots 4 and 15 to Edward T. Sullivan on January 12, 1981. (Defs.' S.M.F. ¶ 5.) After Edward T. Sullivan's death, Lots 4 and 15 were conveyed to Margaret A. Sullivan in August 1985 by deeds from Timothy M. Sullivan, Eileen Sullivan Benko, Maureen Sullivan Thomas, and Patricia Sullivan Hahn. (Defs.' S.M.F. ¶ 4.) On June 30, 2000, Margaret A. Sullivan conveyed Lots 4 and 15 to the defendants by a deed recorded at the Cumberland County Registry of Deeds at Book 15572, Page 311. (Defs.' S.M.F. ¶ 1.)

---

[1] This is the second of the defendants' statements of material fact labeled number 3.

[2] A claim of title by adverse possession or prescriptive easement cannot run against the City of Portland. Portland Water Dist. v. Town of Standish, 2006 ME 104, ¶ 17, 905 A.2d 829, 833-34. The earliest date from which the plaintiff's claims can run is 1968.

## 2. History of Lot 5

Rose A. Shaw conveyed Lot 5 to Robert Spear and Lorraine Spear by a deed dated September 12, 1972. (Defs.' S.M.F. ¶ 15; Pl.'s S. Add'l M.F. ¶ 6.) Robert Spear and Lorraine Spear conveyed Lot 5 to Paul Albert and Donna Albert on June 22, 1978. (Defs.' S.M.F. ¶ 14.) Paul Albert and Donna Albert conveyed Lot 5 to Robert Nolte and Anne Nolte on December 4, 1979. (Defs.' S.M.F. ¶ 13.) Lot 5 had been the subject of a foreclosure action brought by P.J. Currier Lumber Company against Robert Nolte and Anne Nolte. (Defs.' S.M.F. ¶ 12.) The foreclosure judgment, dated April 21, 1995, was issued by the District Court for the Southern District of Cumberland County, Portland. See P.J. Currier Lumber Company, Inc. a/k/a P.J. Currier Lumber Co. v. Nolte, Docket No. PORDC-CV-92- 879. (Defs.' S.M.F. ¶ 12.) P.J. Currier Lumber Company conveyed Lot 5 to the Estate of Armand M. Morgan by a deed dated November 6, 1995. (Defs.' S.M.F. ¶ 11.) The Estate of Armand M. Morgan conveyed Lot 5 to the plaintiff by a deed dated May 22, 2002, recorded at the Cumberland County Registry of Deeds at Book 18062, Page 345. (Defs.' S.M.F. ¶ 3.)

## 3. Prior Litigation Concerning Lot 4

On February 15, 1978, Robert Spear and Lorraine Spear filed a lawsuit in Cumberland County Superior Court and sought a declaratory judgment that they, and not Elizabeth C. Sullivan, were the owners of Lot 4[3] and, in the alternative, that the owned Lot 4 by way of adverse possession. (Defs.' S.M.F. ¶ 16; Pl.'s S. Add'l M.F. ¶ 7.) While the litigation was pending, the Spears sold their interest in Lot 5 to Paul and

---

[3] On June 19, 1978, the Cumberland County Superior Court granted Elizabeth C. Sullivan summary judgment on the issue of the validity of the City's tax taking of Lot 4. (Defs.' S.M.F. ¶ 17, *as qualified by* Pl.'s Opp. S.M.F. ¶ 17); see Spear v. Sullivan, CUMSC-CV-78-216 (Me. Super. Ct., Cum. Cty., June 19, 1978) (Naiman, J.).

Donna Albert on June 22, 1978. (Defs.' S.M.F. ¶ 14.) After the Spears sold Lot 5, no person or entity was substituted for Robert and Lorraine Spear in the litigation between the Spears and Elizabeth C. Sullivan nor did any person seek to intervene as a plaintiff in that action. (Pl.'s S. Add'l M.F. ¶ 10, *as qualified by* Defs' Rep. to Pl.'s S. Add'l M.F. ¶ 10.) On July 15, 1980, the Cumberland County Superior Court issued an Order and Judgment in favor of Elizabeth C. Sullivan and dismissed Robert Spear and Lorraine Spear's complaint with prejudice. (Defs.' S.M.F. ¶ 18); see Spear v. Sullivan, CUMSC-CV-78-216 (Me. Super. Ct., Cum. Cty., July 25, 1980) (Perkins, J.). Pursuant to M.R. Civ. P. 41(b), the Superior Court ruled that "Elizabeth C. Sullivan is vested with title to [Lot 4] in fee simple, free and clear from all claims by the Plaintiffs, or any person claiming by, through or under them." (Defs.' S.M.F. ¶ 19.) [4]

### 4. Subsequent Use of Lot 4 by the Owners of Lot 5

By the date of the court's July 25, 1980 Order and Judgment, Robert Nolte and Anne Nolte owned Lot 5.[5] (Defs.' S.M.F. ¶ 20.) The parties dispute whether the Noltes had permission to leave the stairs leading from the side porch to Lot 4 in place, and use Lot 4 to access said stairs, with the express understanding that that they would be moved to the front of Lot 5 the next time renovation or repair work was done to the side porch on Lot 5.[6] (Defs.' S.M.F. ¶ 22-24; Pl.'s Opp. S.M.F. ¶ 22-24.) According to the defendants, the Noltes recognized and verbally expressed that their use of Lot 4 was

---

[4] The plaintiff denied this statement of fact. (Pl.'s Opp. S.M.F. ¶ 19.)

[5] Robert Nolte died prior to this litigation. (Pl.'s S. Add'l M.F. ¶ 15.)

[6] The only renovation the Noltes performed was installing a railing on the porch. (Defs.' S.M.F. ¶ 27, *as qualified by* Pl.'s Opp. S.M.F. ¶ 27.)

4

permissive. (Defs.' S.M.F. ¶ 25-26.)[7] The plaintiff denies that there was an agreement or understanding regarding the stairs on Lot 4. (Pl.'s Opp. S.M.F. ¶ 25-26.)

The defendants assert that since at least 1992 the property has been unoccupied, no one has made use of the stairs from the Lot 5 side of the porch onto Lot 4, and that no one has used Lot 4 for ingress or egress. (Defs.' S.M.F. ¶¶ 29-31.) The plaintiff claims that since 1995, he and others have walked across Lot 4 and he has allowed others to occupy the property. (Pl.'s Opp. S.M.F. ¶¶ 29-31; McFarland Aff. ¶ 7; Morgan Aff. ¶ 6-8.)[8] Since the Estate of Armand M. Morgan purchased Lot 5 from P.J. Currier Lumber Co., the plaintiff engaged in extensive renovations of 8 Ryefield Street. (Pl.'s S. Add'l M.F. ¶ 14.) The contractors the plaintiff hired to perform these renovations used the side stairs and Lot 4 to go to and from Ryefield Street. (Id.) The plaintiff's tenants have also used the stairs on Lot 4. (Id.) The plaintiff was never aware that he had permission to keep the stairs on the strip of land, conditioned upon his renovations to Lot 5. (Pl.'s S. Add'l M.F. ¶ 20.)

Between March 23, 2009 and May 2009, Mr. Morgan removed the side porch abutting the Defendants' property and the stairs running from the side porch across the boundary line. (Defs.' S.M.F. ¶ 32.) In the fall of 2009, because winter was approaching,

---

[7] The plaintiff objects to some of the defendants' statements on the grounds that they are hearsay and are inadmissible for the purposes of summary judgment. (Pl.'s Opp. S.M.F. ¶¶ 22-26.) The defendants object to some of the plaintiff's statements of fact on the same basis. (Pl.'s S. Add'l M.F. ¶¶ 11-13.) "Evidence set forth in an affidavit in opposition to a motion for a summary judgment must be admissible evidence." Searles v. Trs. of St. Joseph's Coll., 1997 ME 128, ¶ 9 n. 2, 695 A.2d 1206, 1210 n.2; M.R. Civ. P. 56(e) (an affiant must set forth facts that are within the affiant's personal knowledge and that would be admissible in evidence). The court disregards inadmissible hearsay statements.

[8] The plaintiff also claims that since at least 1950 people, including those occupying Lot 5, have used Lot 4 to get to and from Ryefield Street. (Pl.'s S. Add'l M.F. ¶ 13.) The defendants assert that the plaintiff's affidavits establish only that people have used Lot 4 to access Ryefield Street since 1972. (Defs.' R.S.M.F. ¶ 12.) Robert Spear stated that he witnessed Rose Shaw and her family using Lot 4 to access their property since at least 1950. (See Spear Aff. ¶¶ 5-6.)

the plaintiff stopped the construction of a new side porch, which had no stairs. (Defs.' S.M.F. ¶ 33, *as qualified by* Pl.'s Opp. S.M.F. ¶ 33.) On or about February 27, 2010, the plaintiff constructed new stairs from the side porch across the boundary line between the two properties. (Defs.' S.M.F. ¶ 34.)

In his complaint, the plaintiff alleges common law adverse possession; statutory adverse possession; and easement by prescription. In their counterclaim, the defendants allege common law trespass, statutory trespass, and nuisance. The defendants also filed a third-party complaint against Terrance Edwards, the plaintiff's contractor, and allege common law trespass, statutory trespass, nuisance, and negligence. The defendants now move for summary judgment on the plaintiff's three claims.

DISCUSSION

### 1. Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the nonmoving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. See, e.g., Johnson v. McNeil, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. A contested fact is "material" if it could potentially affect the outcome of the case. Inkel v. Livingston, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." Id. When the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to

withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99, ¶ 8, 694 A.2d 924, 926.

2. Effect of the Spear Judgment

The defendants assert that the plaintiff may only attempt to prove adverse possession or the existence of a prescriptive easement from July 25, 1980 when the court dismissed his predecessors' claims based on the same legal theories with prejudice. The plaintiff argues that the July 1980 Order and Judgment is void because the Spears transferred their interest in Lot 5 after the litigation began, depriving the Superior Court of subject matter jurisdiction over the claim. (Pl.'s Opp. S.M.F. ¶ 19.) There is no dispute that when the litigation began, the Spears had standing to bring the claim by virtue of their possessory interest Lot 5. See Mortgage Elec. Registration Sys. v. Saunders, 2010 ME 79, ¶ 7, 2 A.3d 289 ("At a minimum, '[s]tanding to sue means that the party, at the commencement of the litigation, has sufficient personal stake in the controversy to obtain judicial resolution of that controversy.'") (quoting Halfway House Inc. v. City of Portland, 670 A.2d 1377, 1379 (Me. 1996)). The plaintiff claims, however, that the case became moot when the Spears transferred their interest in Lot 5 to the Alberts in 1978, prior to the Superior Court's decision, which deprived the court of subject matter jurisdiction over the claim.

"A judgment issued by a court lacking subject matter jurisdiction is void." Strout, Payson, Pellicani, Hokkanen, Strong & Levine v. Barker, 2001 ME 28, ¶ 6, 765 A.2d 994, 996. However, "[i]t is well established that a valid judgment entered by a court, if not appealed from, generally becomes res judicata and is not subject to later collateral

7

attack." <u>Standish Tel. Co. v. Saco River Tel. & Tel. Co.</u>, 555 A.2d 478, 481 (Me. 1989).[9] "There is a strong policy in favor of ending litigation and giving finality to court judgments. Balanced against that policy favoring finality is a requirement that a judgment, in order to become final, must be valid, and that a judgment rendered without subject matter jurisdiction is invalid and has no *res judicata* effect." <u>Id</u>. (citations omitted). The Law Court has applied the Restatement (Second) of Judgments § 12 to determine whether to give a *res judicata* effect to a prior court's judgment. <u>Id</u>.

> Section 12 provides:
>
> § 12. Contesting Subject Matter Jurisdiction
>
> When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:
> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

<u>Id</u>. (quoting Restatement (Second) of Judgments § 12).

Contrary to the plaintiff's argument, it was not plainly beyond the Superior Court's jurisdiction to dismiss the Spears' claim with prejudice for failure to prosecute

---

[9] Additionally, "[c]laim preclusion bars the relitigation of claims if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." <u>Guardianship of Jewel M.</u>, 2010 ME 80, ¶ 40, 2 A.3d 301, 310. "[P]rivity is created when two or more persons have a mutual or successive relationship to the same rights of property." <u>Northeast Harbor Golf Club, Inc. v. Town of Mount Desert</u>, 618 A.2d 225, 227 (Me. 1992). A dismissal pursuant to Rule 41(b) "operates as an adjudication upon the merits." M.R. Civ. P. 41(b)(3). The plaintiff is a successor owner of the Spears' property, there has been a final judgment on the merits, and the ownership of Lot 4 was actually litigated in the 1980 action. The plaintiff's claim may be barred by claim preclusion.

pursuant to M.R. Civ. P. 41(b). See 4 M.R.S. § 105 (2010) ("[T]he Superior Court has and shall exercise exclusive jurisdiction . . . in any and all matters . . . whether cognizable at law or in equity.") Allowing the judgment to stand would not infringe on any tribunal. Finally, there is nothing to indicate that the court could not capably make an informed decision regarding its own jurisdiction. The plaintiff cannot claim that the Spears court lacked subject matter jurisdiction over the claims.

Additionally, Rule 25, governing substitution of parties, provides that the original party may continue an action after a transfer of interest. M.R. Civ. P. 25(c). Rule 25 provides, in part:

> (c) Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

M.R. Civ. P. 25(c) (emphasis added). Substitution of the real party in interest is discretionary. Mortgage Elec. Reg. Sys., 2010 ME 79, ¶ 16, 2 A.3d 289. The Spears court had jurisdiction over the parties and the subject matter of the claim. The judgment was not rendered void because the Spears transferred their interest to the Noltes while the action was still pending. The 1980 judgment is enforceable.

### 3. Adverse Possession (Counts I and II)[10]

"Adverse possession presents a mixed question of law and fact." Hamlin v. Niedner, 2008 ME 130, ¶ 10, 955 A.2d 251, 254 (quotations omitted). "[W]hether the necessary facts exist is for the trier of fact, but whether those facts constitute adverse possession is an issue of law for the court to decide." Id. "A party claiming title by

---

[10] There is only one claim for adverse possession under Maine law, the common law claim as amended by 14 M.R.S. § 810-A (2010). Dombkowski v. Ferland, 2006 ME 24, ¶ 19, 893 A.2d 599, 604. Accordingly, the defendants' motion for partial summary judgment is granted on count II of the plaintiff's complaint, in which the plaintiff alleges statutory adverse possession.

adverse possession has the burden of proving, by a preponderance of the evidence, that possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period." Weeks v. Krysa, 2008 ME 120, ¶ 12, 955 A.2d 234, 238. "'Whether specific acts are sufficient to establish the elements of adverse possession can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances.'" Id. ¶ 13, 238 (quoting Falvo v. Pejepscot Indus. Park, Inc., 1997 ME 66, ¶ 8, 691 A.2d 1240, 1243).

The defendants claim that the plaintiff's use of Lot 4 has not been hostile because his predecessors, the Noltes, had permission to use Lot 4. "The requirement that possession be 'hostile' generally means that the 'possessor does not have the true owner's permission to be on the land . . . .'" Hamlin, 2008 ME 130, ¶ 12, 955 A.2d at 255 (quoting Wood v. Bell, 2006 ME 98, ¶ 13, 902 A.2d 843, 849). "[P]ermission, either express or implied, negates the element of hostility and prevents acquisition of title by adverse possession." Id.

To controvert the defendants' statements of material fact regarding whether the Noltes had permission to keep the stairs on Lot 4 and whether that the permission could be revoked at any time, the plaintiff cites certain portions of Ms. Nolte's deposition testimony and his own affidavit testimony.[11] The portions of Ms. Nolte's testimony cited by the plaintiff indicate that she did not have conversations regarding removing the steps and she had no knowledge concerning conversations her husband may have had with the Sullivans regarding the steps located on Lot 4. (Nolte Dep. 32:6-

---

[11] The plaintiff also cites to the Affidavit of Robert Edmond Mittel at paragraph 6. (Pl.'s S. Add'l M.F. ¶ 22.) There is no paragraph 6 in Mr. Mittel's affidavit.

22, 48:18-49:9.) In his affidavit, the plaintiff states that Ms. Sullivan never stated to him that his use of Lot 4 was permissive or that there had been an agreement with previous owners of Lot 5. (Pl.'s Aff. ¶ 9.)

In response, the defendants cite additional portions of Ms. Nolte's deposition testimony. Ms. Nolte testified that her understanding was that their use of Lot 4 was permissive. (Defs.' Rep. to Pl.'s S. Add'l M.F. ¶ 13; Nolte Dep. 21:17-24, 39:6-9, 44:20-23, 45:25-46:7.) Ms. Nolte testified that she agreed with Ms. Sullivan's affidavit. (Defs.' Rep. to Pl.'s S. Add'l M.F. ¶ 13; Nolte Dep. 46:12-47:9.) Ms. Sullivan stated in her affidavit that she gave the Noltes permission to use Lot 4 and that she could revoke that permission at any time. (Defs.' S.M.F. ¶ 24; Sullivan Aff. ¶¶ 20-21.)

The plaintiff has failed to raise a genuine issue of material fact as to whether the Noltes had permission to use Lot 4. See Weinstein v. Sanborn, 1999 ME 181, ¶ 5, 741 A.2d 459, 460 (finding that the deposition testimony of the predecessor-in-interest established "that she had never thought that the strip of land belonged to her family; that she had never intended to occupy the land or possess it to the exclusion of the neighbor; and that she did not use the land in any manner consistent with exclusive ownership"). Because there is no genuine issue of material fact regarding the Noltes' permission to use Lot 4, the plaintiff's adverse possession claim fails. Hamlin, 2008 ME 130, ¶ 14, 955 A.2d at 255.

4. Easement by Prescription (Count III)

'"The party asserting an easement by prescription must prove continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed."' Jordan v. Shea, 2002 ME 36, ¶ 22, 791 A.2d 116, 122 (quoting Stickney v. City of Saco, 2001 ME 69, ¶ 16, 770 A.2d 592, 601).

11

Similar to the analysis of whether possession and use of the land was hostile for the claim of adverse possession, "[s]eeking permission ... negates the prescriptive user's claim that use of the property was adverse to the owner." Jordan, 2002 ME 36, ¶ 24, 791 A.2d at 123; see Stickney, 2001 ME 69, ¶ 21, 770 A.2d at 602 (noting that use of property is adverse when the owner has not given permission for that use). The party asserting an easement cannot show acquiescence if the owner gives permission to use their land. "'Acquiescence implies passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it.'" Shadan v. Town of Skowhegan, 1997 ME 187, ¶ 6, 700 A.2d 245, 247 (quoting Town of Manchester v. Augusta Country Club, 477 A.2d 1124, 1130 (Me. 1984) (quotations omitted)). As discussed above, because the plaintiff has not raised an issue of material fact regarding the Noltes'. permission to use Lot 4, his assertion of a prescriptive easement fails. Jordan, 2002 ME 36, ¶ 24, 791 A.2d at 123 ("This failure to establish that use of the property was under a claim of right adverse to the owner is fatal to the claim for a prescriptive easement.").

The entry is

> The Defendants' Motion for Partial Summary Judgment is GRANTED. Judgment is entered in favor of the Defendants and against the Plaintiff on Counts I, II, and III of the Plaintiff's Complaint.

Date: March 22, 2011

Nancy Mills
Justice, Superior Court

12

OF COURTS
erland County
Street, Ground Floor
nd, ME 04101



JOHN TURCOTTE ESQ
AINSWORTH THELIN
PO BOX 2412
SOUTH PORTLAND ME 04116

IF COURTS
and County
reet, Ground Floor
ME 04101

ROBERT MITTEL ESQ
JONATHAN GOLDBERG ESQ
MITTEL ASEN
PO BOX 427
PORTLAND ME 04112