STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-2016-229

MAYBELLE L. DEAN,
        Plaintiff

v.

**DECISION AND JUDGMENT**

PETER BRAGDON,
        Defendant

## INTRODUCTION

This matter is before the court for resolution following a nonjury trial held on January 16 and 18, 2018. The Plaintiff commenced this action by filing a complaint for declaratory relief on December 8, 2016, seeking a determination from the court that she has right, title and interest to certain real estate in Vassalboro. The Defendant answered and filed a counterclaim on November 30, 2016 in which he claimed ownership of the property in question through adverse possession.[1]

The Plaintiff, Maybelle Dean, did not attend the trial as she is over 100 years of age. Nevertheless, her daughter and power of attorney (Debra Shipman) appeared for her. The Plaintiff's case-in-chief consisted of offering and admitting into evidence without objection Plaintiff's Exhibits 1 and 1(a) through 1(f), being the

---

[1] In his counterclaim, the Defendant (Bragdon) claimed ownership through adverse possession of the entire property that is described in Plaintiff's (Dean's) deed. At trial, however, the Defendant testified that he was only claiming ownership to property on which he had cut hay. No evidence was presented that specifically and clearly identified that property.

various documents in her chain of title. In the Defendant's case (the counterclaim) the court received the testimony of the following witnesses called by the Defendant: Debra Shipman; Peter Bragdon; Albert Pinkham; Donald Cote; David Akers; Richard Sugar, and; Malcolm Springer. The Plaintiff called the following witnesses in rebuttal: Richard Phippen; Leslie Davis; Debra Shipman; Winslow Carlyle Dean. Admitted into evidence were Plaintiff's Exhibits 1, 1(a) through 1(f), 2-4, 5 and 5(a), 6-9, 10, 10(a) & 10(b), and 11-22.

The court declined to rule on the Plaintiff's motion for judgment as a matter of law at the close of the Defendant's case-in-chief. *See* M.R.Civ.P. 50(d). The parties submitted post-trial written arguments, the last of which was received by the court on March 7, 2018. Based on the evidence presented at trial, and after consideration of the parties' post-trial arguments, the court makes the following findings of fact.

## FINDINGS OF FACT

The property that is the subject of this litigation is located in Vassalboro in the area of Hannaford Hill Road and Webber Pond Road. Plaintiff's Exhibit 5(a) depicts parcels in pink that are owned by Defendant Peter Bragdon. The parcels highlighted in yellow that are adjoining to Mr. Bragdon's property (Lots 28, 147 & 155) are what is claimed by the Defendant by adverse possession.[2]

The source of Plaintiff's claim of title is a deed dated December 30, 1992 to the Plaintiff from Boston Safe Deposit and Trust Company of Boston, as Trustee of a trust created by Louis W. Dean.[3] *See* Pl's Ex. 1. This deed purported to convey a total of ten (10) parcels or tracts of land in Vassalboro, including the property that is in dispute in this case. This deed was not recorded in the Kennebec Registry of

---

[2] At trial Mr. Bragdon admitted that he was not claiming ownership to lots 20 and 91 highlighted in yellow on Plaintiff's Exhibit 5(a).

[3] It is the court's understanding that Louis Dean was the Plaintiff's father-in-law.

2

Deeds until March 1, 2016. Notwithstanding the Defendant's argument that the deed to the Plaintiff, and the supporting chain of title documents, were ineffective to convey title to her, the court finds that the Plaintiff has proved by a preponderance of the evidence that she has ownership by deed to the land in dispute.

Louis Dean of Weston, Massachusetts acquired the parcels of land in Vassalboro in 1954 by warranty deeds. Pl.'s Exhs. 1(d) & 1(e). In January 1957 he created the "Louis W. Dean Indenture of Trust" a provision of which specified that the principal of the trust would be disposed of according to the last will of his son Wendall A. Dean. Pl/'s Ex. 1(a), Art. IV, §3 at 12. When Louis died in 1960 or 1961,[4] he left the remainder of his estate and property to the trustees of his trust. Pl.'s Ex. 1(b). When Wendall A. Dean died, his will left all of his estate to his wife Maybelle.[5] Pl.'s Ex. 1(e). It was through this series of transactions and events that the trustee, Boston Safe Deposit and Trust Co., conveyed the Vassalboro properties by deed to the Plaintiff in 1992. The court accepts the testimony of Debra Shipman that the failure to record the deed for 24 years was due to oversight at the time. The deed was eventually recorded in March 2016 when the Plaintiff's family was organizing her trust.

Maybelle Dean is a resident of New Hampshire. The court found the testimony of Debra Shipman, Leslie Davis and Winslow Carlyle Dean credible on the subject of their visits to the Vassalboro property over the years beginning in about 1989. The court finds that while he was alive the Plaintiff's husband (Wendall A. Dean) gave permission to a man named George Gould, and perhaps his son as well,[6] to cut hay on the property and there may have been sheep and goats grazing

---

[4] The abstract of will for Louis Dean is dated May 8, 1961. It does not indicate the date of death, and the court does not recall any testimony as to when Louis died.

[5] The court does not recall any testimony as to when Wendall A. Dean died.

[6] The children of the Plaintiff also mentioned a man named Carter who also may have been allowed to cut hay on the property, but no details were provided.

on the property. The court further finds that the Defendant, Mr. Bragdon, was aware that Mr. Gould cut hay on the property.

The Defendant acquired his property in 1977. He testified that he began cutting hay on the property in dispute in 1988 and that he "claimed" the property as his own at that time. Over the years he allowed others to hunt and trap on the land, hired people to help him in cutting the hay and loading the bales and leased a portion of the disputed property to another farmer to grow alfalfa. He could only get one cut of hay in most years. He put gravel down in order to improve his access to the fields and may have removed some fencing as well.

The court does not doubt that that the Defendant cut hay on the disputed property for many years during the summers. Moreover, in light of the fact that the Deans were from out-of-state and did not reside on the property and only visited the property sporadically, it is not surprising that those people who had dealings with Mr. Bragdon, like Messrs. Pinkham, Cote, Akers, Sugar and Springer assumed that he owned the property.

There were certain aspect of Mr. Bragdon's testimony, however, that the court did not find persuasive. The court finds that the Defendant was aware that George Gould had cut hay on the "Dean" property and that he (Mr. Bragdon) told Debra Shipman and Leslie Davis and her husband in April 2016 that he had received verbal permission from Mr. Gould to cut the hay. At trial he denied saying this. He also told them that he may have spoken to Maybelle Dean, although he testified that he was 90% positive that he never spoke to her on the phone and that he had no idea who she was. Plaintiff's Exhibit 9 is inconsistent with this testimony and is relevant

on the issue of whether Mr. Bragdon and the Plaintiff ever had knowledge of each other.[7]

Moreover, there was substantial evidence presented regarding the Maine Department of Transportation and its taking of small pieces of the disputed property in 2007. The Defendant never asserted to MDOT that he owned the land being taken. Rather, the checks were sent to the Plaintiff. The Defendant never paid any taxes on the disputed land and testified that he would have been foolish to tell the town he owned the property so he could be taxed for it. On the other hand, the Plaintiff paid all taxes due on the property.

Furthermore, the Defendant denied ever speaking with former Chief of Police Richard Phippen several years ago regarding the property in dispute. Chief Phippen testified that he had two conversations with the Defendant that involved the property he was haying. The first was about ten years ago and, according to Phippen, the Defendant told him that the Dean property was "controlled by a bank in Boston," and that he (the Defendant) had a "year to year lease." The second conversation occurred approximately five years ago and, according to Phippen, the Defendant told him that the property was in an estate and "people were coming forward."[8] Phippen testified that the Defendant never claimed ownership of the land. The court found Phippen's testimony credible.

Finally, when Leslie Davis, the Plaintiff's daughter, wrote to the Defendant on September 27, 2016 to inform him that the Plaintiff had decided to lease the

---

[7] Plaintiff's Exhibit 9 was admitted over the Defendant's objection. The Defendant argues that the court should give no consideration to this exhibit because it is hearsay. The court disagrees. Plaintiff's Exhibit 9 was not offered to prove the content of any out-of-court statement. Rather, it was admitted as relevant on the issue of prior contact or at least knowledge between the parties and also as impeachment evidence of the Defendant.

[8] In this conversation, Phippen asked the Defendant why he did not fertilize the fields he was haying. Phippen testified that the Defendant replied that he had put liquid seaweed/kelp on the field but did not know what was going to happen to the land. The Defendant testified that, in fact, he did use seaweed/kelp fertilizer on the hay fields on at least one occasion.

property to Johnny's Selected Seeds, the Defendant's response on September 28, 2016 was the following:

> I thought you where [sic] going to give me a chance to lease the property so I could get the hay that should have come of [sic] the land. The hay I got in the past wasnt [sic] even worth mowing. I did it because I dint [sic] want the fields to grow into bushes. If you ever decide to sell please give me chance to purchase it.

Pl.'s Ex. 13.

At trial the Defendant testified that he did not claim ownership of the property through adverse possession because he was unaware of his legal rights and also because he was trying to settle the matter with the Deans to avoid litigation. The court finds this explanation unconvincing. The court finds that the Defendant never expressed to any member of the Dean family that he was claiming or had ever claim ownership of the property.

## DISCUSSION

### A. Plaintiff's Claim of Ownership By Deed

The court has found that the Plaintiff has proved by a preponderance of the evidence that she owns the property in dispute by deed, as shown by the deed to her from the Boston Safe Deposit and Trust Company, and the documents supporting her chain of title. The fact that the deed was not recorded until March 1, 2016 is of no consequence in this litigation since the Defendant is not a good faith purchaser of the property. Moreover, the court finds as a fact that the Defendant knew who owned the property on which he was cutting hay. It is not credible under the facts and circumstances of this case that the Defendant was ignorant of who owned the land across the road from him and which he now claims to own by adverse possession.

## B. Defendant's Adverse Possession Counterclaim

In order to demonstrate that his use and possession of the land in Vassalboro deeded to the Plaintiff, was sufficient to establish ownership by adverse possession, the Defendant must prove nine elements by a preponderance of the evidence. *Weeks v. Krysa*, 2008 ME 120, ¶ 12, 955 A.2d 234. Those elements are that the use and possession of the property was: (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive, and (9) for a duration of more than twenty years. *Harvey v. Furrow*, 2014 ME 149, ¶ 11, 107 A.3d 604.

The court finds that the Defendant has failed to carry his burden of proof as to several elements of his counterclaim for adverse possession of the land in dispute.

The court agrees with the Plaintiff that the Defendant has not proven that he used and possessed the land under a claim of right. To prevail in an adverse possession claim, the Defendant must be making a claim of right adverse to the true owner. *Androkites v. White*, 2010 ME 133, ¶ 16, 10 A.3d 677. Here, the most that the Defendant established at trial was that he cut hay on the land and people he dealt with assumed he owned the land because he allowed them to hunt and trap on the property. He also leased a small portion of the land to another farmer for a small amount of money to grow alfalfa, which was unsuccessful.

Under the factual circumstances of this case, that is not enough to satisfy the requirement that the Defendant was acting under a claim of right adverse to the Plaintiff. The evidence showed that the Plaintiff's husband – Wendall – and perhaps her father in law – Louis – allowed others to cut hay on the property. Indeed, the evidence suggested that this was encouraged and appreciated and was done without the exchange of any monetary compensation. There was also evidence that goats and sheep were allowed to graze on the land.

The Defendant acknowledged to the Plaintiff's daughters in April 2016 that he had verbal permission from George Gould to cut hay on the land, and he expressed an interest in leasing or purchasing the property at that time. This evidence is inconsistent with the Defendant's adverse claim of right. Rather, it supports the conclusion that his cutting of hay upon the property was not adverse to the true owner, but permitted. This conclusion is further supported by the Defendant's e-mail to Leslie Davis on September 28, 2016 asking that he be given the opportunity to lease or purchase the land if the Deans were interested in doing so.

The evidence of his conversations with former Chief Phippen, his failure to pay any taxes on the property and his failure to assert ownership to MDOT, is all consistent with a finding that the Defendant has not shown a necessary element of adverse possession, namely, under a claim of right adverse to the true owner.

Similarly, the Defendant has failed to meet his burden as to the requirement that his possession and use be both "notorious" and "hostile." Although the Defendant's cutting of hay was known to people in the area, it was seasonal only and involved a single cutting involving a matter of days or a few weeks at most. Cutting hay on the land was not hostile to the claim of the true owner. On the contrary, cutting the hay was welcomed by the Deans who had historically permitted it. The fact that the Defendant was cutting the hay would not have put the Plaintiff on notice that he was making a claim of ownership that would dispossess her of the land. Rather, his cutting of the hay was consistent with a practice that had been allowed for decades. *Weinstein v. Hurlbert*, 2012 ME 84, ¶ 12, 45 A.3d 743; *Strieft v. Charles-Keyt-Leaman Partnership*, 1999ME 111, ¶ 6, 733 A.2d 984.

For the same reason, while the Defendant cut hay on the land for over 20 years, the court is not persuaded that the use and possession described by Mr. Bragdon and the witnesses he presented at trial was the "continuous" and

8

"exclusive" type of use and possession contemplated as being sufficient to prove those elements of an adverse possession claim. Simply cutting hay during the summer for a few days or weeks on land belonging to another where such a practice was permitted by the true owner for many decades is not the type of conduct that should support an adverse possession claim as against the true title owner.

In short, the evidence offered in support of the Defendant's adverse possession counterclaim was not particularly strong or persuasive and, in the court's view, did not satisfy the preponderance of the evidence standard of proof. *See Hamlin v. Nieder*, 2008 ME 130, ¶ 11, 955 A.2d 251.

## CONCLUSION

The entry is:

Judgment for the Plaintiff on her Complaint for declaratory relief. The Plaintiff is declared to be the rightful owner of the property described in a deed from Boston Safe Deposit and Trust Company dated December 30, 1992 and recorded in the Kennebec Registry of Deeds at Book 12236, Pages 25-27.

Judgment for the Plaintiff on the Defendant's Counterclaim for adverse possession of the property.

The Clerk is directed to incorporate this Decision and Judgment into the docket of this case by notation reference in accordance with M.R.Civ.P. 79(a).

DATED: April 17, 2018

William R. Stokes
Superior Court Justice

9